ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT W. LEDERHILGER III,<br><br>Defendant. | **SEALED INDICTMENT**<br><br>23 Cr.<br><br>**23 CRIM 116** |

## COUNT ONE
### (Mail Fraud)

The Grand Jury charges:

#### The Defendant's Mail Fraud Scheme

1.  From at least in or about March 2015 through at least in or about May 2022, ROBERT W. LEDERHILGER III, the defendant, engaged in a scheme to induce small businesses (the "Victim Businesses") located throughout the United States to pay for webhosting services that were not and never intended to be rendered.

2.  ROBERT W. LEDERHILGER III, the defendant, owned and operated a company called "Enterprise Service Level LLC." Lederhilger, at times, also operated under the names "Web Host Agents," "Certified Web Services," and "FreeBird Host LLC." Collectively, "Enterprise Service Level LLC," "Web Host Agents," "Certified Web Services," and "FreeBird Host LLC" are referred to herein as the "Lederhilger Companies."

3.  In or about July 2016, ROBERT W. LEDERHILGER III, the defendant, contracted with a mass printing and mailing company in Georgia (the "Printer") to print and mail solicitations for webhosting services or renewal invoices for webhosting services (the "Deceptive Mailings") to Victim Businesses throughout the United States. The Deceptive Mailings were designed to

convincingly and misleadingly look like invoices for webhosting services that had already been rendered by a Lederhilger Company. The Deceptive Mailings included all the hallmarks of an actual invoice for services already rendered: it listed a due date, the amount due, a description of the services provided, i.e. "Yearly Web Hosting," a phone number for billing inquiries, and it requested that a check be made payable to a Lederhilger Company. LEDERHILGER caused the Deceptive Mailings to be sent via the United States mail at a rate of several thousand per month beginning at least in or about July 2016 through in or about March 2021.

4.      ROBERT W. LEDERHILGER III, the defendant, engaged a large-scale commercial mail receiving agency (the "CMRA") with mailbox locations throughout the United States to receive mailed responses to the Deceptive Mailings for the Lederhilger Companies, including at a mailbox located on Park Avenue South in New York, New York (the "Park Avenue South Address").

5.      In response to the Deceptive Mailings, Victim Businesses sent checks for approximately $180 via United States mail to the Park Avenue South Address, which were processed and deposited by the CMRA into bank accounts controlled by ROBERT W. LEDERHILGER III, the defendant. LEDERHILGER provided no services to the Victim Businesses in exchange for the $180 they each paid.

6.      In addition to sending Deceptive Mailings directly from the Lederhilger Companies, ROBERT W. LEDERHILGER III, the defendant, caused others to send Deceptive Mailings to Victim Businesses around the country.

    a.      LEDERHILGER, via the Enterprise Service Level website, offered what he described as a "Reseller Program," which he claimed would allow others to sell webhosting services without any technical acumen. LEDERHILGER purported to offer participants in the

program, *i.e.*, the "Resellers," the following services: (i) an exclusive territory; (ii) a list of leads every month; (iii) a marketing system; (iv) a website; (v) backend billing system; (vi) back-office support staff; and (vii) all technological order fulfillment. LEDERHILGER agreed to provide on the Reseller's behalf the webhosting services to the end users, *i.e.* the Victim Businesses. In exchange for these services, the Resellers agreed to pay LEDERHILGER via Enterprise Service Level, approximately 44% of the between approximately $180 and approximately $192 that each Victim Business paid. The Resellers were also required to cover the costs for printing Deceptive Mailings from their "reseller" businesses, pay the wages of the back-office support staff, and pay LEDERHILGER for the monthly lead lists.

      b.      LEDERHILGER required that Resellers take the following steps before participating in the program: create Limited Liability Companies (the "Reseller LLCs"), open corresponding bank accounts, enter agreements with the Printer to print and mail the Deceptive Mailings, open mailboxes at the CMRA to receive responses to the Deceptive Mailings, obtain a business phone line, and pay the back-office support staff that LEDERHILGER provided.

      c.      While the Resellers operated independently of each other in their own LEDERHILGER-assigned territories, LEDERHILGER, via the Printer, coordinated and oversaw the printing and mailing of all the Deceptive Mailings across the Resellers.

      d.      The Resellers, acting at LEDERHILGER's direction, caused Deceptive Mailings to be sent throughout the United States to Victim Businesses. In response, Victim Businesses mailed checks for between $180 and $192 to the Resellers at CMRA mailboxes throughout the United States, including to the Park Avenue South Address.

      e.      Despite LEDERHILGER's ostensible agreement that Enterprise Service Level would provide the webhosting services to the Victim Businesses on the Resellers' behalf,

LEDERHILGER and Enterprise Service Level did not provide any services to the Victim Businesses.

7. As a result, from at least in or about March 2015 through at least in or about May 2022, ROBERT W. LEDERHILGER III, the defendant, through the Lederhilger Companies and the Reseller LLCs, caused Deceptive Mailings to be sent to tens of thousands of Victim Businesses, which fraudulently induced more than approximately 38,000 payments by the Victim Businesses to the Lederhilger Companies and the Reseller LLCs, approximately $7 million paid for services not rendered.

## Statutory Allegations

8. From at least in or about March 2015 through at least in or about May 2022, in the Southern District of New York and elsewhere, ROBERT W. LEDERHILGER III, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did cause to be delivered by mail and such carriers, according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, to wit, LEDERHILGER sent and caused others to send by United States mail deceptive mailings relating to purported webhosting services to fraudulently induce victim businesses to send payments by mail to New

York, New York, among other places, for webhosting services that were not and LEDERHILGER never intended to be rendered.

(Title 18, United States Code, Sections 1341 and 2.)

## FORFEITURE ALLEGATION

9.  As a result of committing the offense alleged in Count One of this Indictment, ROBERT W. LEDERHILGER III, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense and the following specific property:

a.  Up to $207,000 in United States currency on deposit in Account number 14676012 at Vanguard Group, Inc. held in the name of "Robert W. Lederhilger," including accrued interest;

b.  Up to $33,730 in United States currency on deposit in Account number 77692300 at Vanguard Group, Inc. held in the name of "Josivette Lederhilger," including accrued interest.

Substitute Asset Provision

10.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
Foreperson

_____
DAMIAN WILLIAMS
United States Attorney

SEALED
3/6/23 INDICTMENT FILED,
ARREST WARRANT ISSUED. CF

GABRIEL W. GORENSTEIN
USMJ